L. Stephen RIDENOUR,
et al., Plaintiffs,

v.

BANK OF AMERICA, N.A.,
et al., Defendants.

Case No. 13–cv–0317–BLW.

United States District Court,
D. Idaho.

Signed May 22, 2014.

---

Susan P. Weeks, James Vernon & Weeks, Coeur D'Alene, ID, for Plaintiff.

Amber N. Dina, Kelly Greene McConnell, Givens Pursley, Boise, ID, for Defendants.

## ORDER ON DEFENDANTS' MOTION TO DISMISS (Doc. 4)

RICHARD C. TALLMAN, Circuit Judge.

### Introduction

Stephen and Vickey Ridenour sued several companies connected to their residential mortgage. Those companies have moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 4. The court reviewed the complaint and the briefs and held oral argument on May 8, 2014. For the reasons that follow, the motion is granted in part and denied in part.

### Background

The Ridenours borrowed $553,000 to buy a home on the Spokane River near Post Falls, Idaho, in 2005. Doc. 1 at ¶ 8. Three years later they stopped making payments. *Id.* ¶ 9. After a year of negotiation, their loan servicer sent them a "Loan Modification Agreement" adjusting the terms of their mortgage. *Id.* ¶ 10, 11, 14. The agreement misspelled the Ridenours' first names, each by a single letter. Doc. 1–3. The Ridenours inked in the correct letters, signed the contract, and mailed it in. Doc. 1 at ¶ 14; doc. 1–3. A few days later, the servicer rejected the contract, apparently because the Ridenours fixed their names. Doc. 1 at ¶ 15; doc. 1–4 at 2. That rejection kicked off five years of phone calls, letters, and negotiations— even two lawsuits. Doc. 1 at ¶¶ 16–40; doc. 4–3 at ¶ 3(a).

In this, the second lawsuit, the Ridenours complain against Bank of America, N.A. (ultimate successor to Banner Bank, the original lender), BAC Home Loans Servicing, LP (a Bank of America subsidiary created to service acquired loans), ReconTrust Company, N.A., and Mortgage Electronic Registration Systems. Doc. 1 at ¶¶ 2–6. They bring five claims: one

entitled "Bank of America Has Repeatedly Failed to Provide the Requested Net Present Value Inputs and Cannot Maintain a Trustee Sale," *id.* ¶¶ 44–63; a breach of contract claim, *id.* ¶¶ 64–69; a fraud claim, *id.* ¶¶ 79–88; a promissory estoppel claim, *id.* ¶¶ 70–78; and a claim for negligent infliction of emotional distress, *id.* ¶¶ 89–92. The defendants move to dismiss the entire complaint. Doc. 4–1.

## Legal Standards

### *Motions to Dismiss*

■ Rule 12(b)(6) motions assert that the plaintiff has failed "to state a claim upon which relief can be granted." What it takes to state a claim depends on the type of claim. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). Other causes of action require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). The "short and plain" standard is satisfied if the plaintiff's allegations, taken as true, "nudge[ ] their claims across the line from conceivable to plausible." *Bell Atantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Detailed factual allegations" are unnecessary, but "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are inadequate. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

### *Leave to Amend*

■ Rule 15(a)(2) provides that "the court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). The "freely give leave" policy is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir.2003). But courts do consider whether the plaintiff has shown bad faith, delayed the proceedings unduly, or repeatedly failed to plead successfully. *Id.* at 1051–52 (citing *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). They also consider whether amendment will prejudice the defendant and whether amendment would be futile. *Id.* Of all these considerations, prejudice is the most important. *Id.*

### *Judicial Notice*

■ Rule 201(b)(2) of the Federal Rules of Evidence allows courts to "judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." This includes the existence and contents of documents on file with federal courts, *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131–32 (9th Cir.2012), and county recorders, *see, e.g., Grant v. Aurora Loan Servs., Inc.*, 736 F.Supp.2d 1257, 1263 (C.D.Cal.2010) (collecting cases).

## Analysis

The court will first address the defendants' request for judicial notice, doc. 4–3; then the claims that the Ridenours concede should be dismissed with prejudice, doc. 14 at 2, 4; then the claims that the Ridenours concede should be dismissed with leave to amend, *id.* at 6–9; then the negligent infliction of emotional distress claim; and finally the breach of contract claim.

### *Judicial Notice*

The defendants' request for judicial notice is GRANTED. Documents on file with other courts and county recorders' offices are routinely subject to judicial notice. *Harris*, 682 F.3d at 1131–32; *Grant*, 736 F.Supp.2d at 1263. Moreover, the Ridenours did not object.

## Conceded Claims

The Ridenours make several concessions. First, they concede that their claims against defendants MERS and ReconTrust should be dismissed with prejudice. Second, they concede that the claim entitled "Bank of America Has Repeatedly Failed to Provide the Requested Net Present Value Inputs and Cannot Maintain a Trustee Sale," should be dismissed with prejudice. Third, they concede that their claim for injunctive relief is moot. With thanks to the Ridenours for their candor, the court accepts these concessions.

■ Having done so, four claims alleged against two defendants remain. The remaining claims are for breach of contract, promissory estoppel, negligent infliction of emotional distress, and fraud. The remaining defendants are Bank of America and BAC Home Loans. At oral argument, defense counsel helpfully explained that these two defendants are, in effect, one. BAC was created by Bank of America to service acquired loans. Later, the bank absorbed its subsidiary. Accordingly, the court will refer to both as "the bank" from here on.

## Leave to Amend

The Ridenours concede that their fraud and promissory estoppel claims were inadequately pled. Doc. 14 at 7–10. Although the defendants sought dismissal with prejudice in their briefs, defense counsel softened at oral argument, all but conceding that leave to amend was appropriate. Indeed, the relevant factors point in that direction. The bank doesn't argue prejudice, bad faith, or undue delay and there haven't been repeated failures to plead successfully. Accordingly, the promissory estoppel and fraud claims are DISMISSED WITHOUT PREJUDICE and the Ridenours are GRANTED leave to amend.

## Negligent Infliction of Emotional Distress

■ The Ridenours allege negligent infliction of emotional distress. The elements are "(1) a legal duty recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the plaintiff's injury; and (4) actual loss or damage.... Additionally, there must be a physical manifestation of the plaintiff's emotional injury...." *Frogley v. Meridian Joint Sch. Dist. No. 2,* 155 Idaho 558, 314 P.3d 613, 624 (2013). The bank argues that the claim is time-barred and that it owed the Ridenours no legal duty.

## Timeliness

Negligent infliction claims grow stale after two years. *Id. Code Ann.* § 5–219(4). They "shall be deemed to have accrued as of the time of the occurrence, act or omission complained of...." *Id.* Thus, these claims must be filed within two years of the "act or omission." Here, the complaint was filed on July 19, 2013. Doc. 1. But the parties agreed to toll the limitations period when they dismissed the prior case. Doc. 4–1 at 16, n. 10. Accordingly, the filing date that matters is October 27, 2011, when the prior case was filed. Two years back from that date is October 27, 2009. Thus, this claim is timely if the "act or omission" occurred after October 27, 2009.

■ It did. The Ridenours say that the "act" was the bank noticing their home for sale on September 17, 2010. Doc. 14 at 11. Accordingly, their claim is timely as to that theory. The bank's argument otherwise is unpersuasive. It argues that the Ridenours' claim accrued when the bank rejected the modification agreement in July 2009. Doc. 4–1 at 15. Although outside the limitations period, that's not the event the Ridenours rely on, so it's timeli-

ness is irrelevant. If, however, the Ridenours amend this claim to rely on a different act, then the bank may reassert its timeliness defense.

### Duty

The duty question is trickier. The plaintiff must show that the defendant breached a duty "recognized by law." The Ridenours argue that the duty breached here was created by the HAMP guidelines. Doc. 14 at 11–12. No Idaho court has decided whether the HAMP guidelines create legal duties, but Idaho does have general rules about when agency rules do and don't create legal duties. Applying those rules to the HAMP guidelines leaves the Ridenours out of luck.

Idaho uses the same rules to answer the "what duties count" question for negligent infliction claims as it does for pure negligence claims. *See Nation v. State, Dep't of Correction,* 144 Idaho 177, 158 P.3d 953, 967 (2007) (dismissing negligence claim for lack of duty, then dismissing negligent infliction claim for the same reason by reference to the negligence analysis). Agency rules only take on the necessary legal force if promulgated as regulations. *Id.* at 965. The HAMP guidelines are not regulations. Thus, they do not create legal duties, and the claim, as pled, should be dismissed.

### Futility

Having decided that the Ridenours failed to allege a legal duty, the next question is whether to grant leave to amend. Leave would be inappropriate if the claim were futile—that is, if there were no viable legal duty the Ridenours could rely on. But the Ridenours' allegations suggest two legal duties on which they might rely.

First, they could rely on the general duty to avoid foreseeable risks of harm.

*Frogley,* 314 P.3d at 624 ("Every person 'has a duty to exercise ordinary care to prevent unreasonable, foreseeable risks of harm to others.'" (quoting *Nation,* 158 P.3d at 965)). The Ridenours' allegations support the theory that the bank breached its duty to protect them from the foreseeable distress of getting the run-around as to whether one will lose one's home.

Second, they could rely on the statutory duty of loan servicers to provide NPV "input data ... to the borrower at the time of [the modification's] denial":

> The Secretary of the Treasury ... shall revise the ... guidelines for the Home Affordable Modification Program ... to require each mortgage servicer participating in such program to provide each borrower under a mortgage whose request for a mortgage modification under the Program is denied with all borrower-related and mortgage-related input data used in any net present value (NPV) analyses performed in connection with the subject mortgage. Such input data shall be provided to the borrower *at the time of such denial.*

12 U.S.C. § 5219a(a). According to the Ridenours' allegations, the bank didn't provide them with input values until long after it denied their modification.

Either of these two duties appears viable, and so the Ridenours' claim for negligent infliction can't yet be deemed futile. The court notes, however, that the bank is not foreclosed from arguing that these two duties, or any other on which the Ridenours may choose to rely, are insufficient. Accordingly, the Ridenours' claim for negligent infliction of emotional distress is DISMISSED WITHOUT PREJUDICE and the Ridenours are GRANTED leave to amend.

### Breach of Contract

The Ridenours' breach of contract theory has been upheld elsewhere: "Wigod alleges that Wells Fargo agreed to permanently modify her home loan, deliberately misled her into believing it would do so, and then refused to make good on its promise. These allegations support garden-variety claims for breach of contract or promissory estoppel." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555 (7th Cir.2012). The elements are: "(a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages." *Mosell Equities, LLC v. Berryhill & Co., Inc.*, 154 Idaho 269, 297 P.3d 232, 241 (2013). The bank challenges damages and the formation aspect of existence. Doc. 4–1 at 10–11.

### Formation

"Formation of a valid contract requires that there be a meeting of the minds as evidenced by a manifestation of mutual intent to contract. This manifestation takes the form of an offer and acceptance.... In a dispute over contract formation it is incumbent upon the plaintiff to prove a distinct and common understanding between the parties." *Inland Title Co. v. Comstock*, 116 Idaho 701, 779 P.2d 15, 17 (1989) (internal citations omitted). Here, the Ridenours have alleged "distinct and common" terms, offer, and acceptance. The key allegations are those describing the "Loan Modification Agreement." The Ridenours allege that the bank offered to modify their loan according to the terms in the "Loan Modification Agreement," doc. 1–3, and that they accepted those terms by signing the agreement and sending it back. The agreement, on its face, appears to have all the necessary terms. It is more than plausible that there was a contract here.

The bank raised one argument in their brief and another at oral argument. The brief argument is a quibble over word choice. The bank argues that the Ridenours have pled themselves out of their claim by using the word reject rather than renege: "[the Ridenours own] allegations show that [the bank] rejected the agreement." Doc. 4–1 at 11. This misses the point. If a contract was formed when the Ridenours mailed in the signed agreement, then the bank's refusal to honor the modified terms was a breach no matter how characterized.

At oral argument, the bank offered a different characterization. It argued that by fixing their first names, the Ridenours turned their acceptance into a counteroffer. Not so. An acceptance doesn't become a counteroffer unless it introduces a "material variance" into the terms. *E.g., Suitts v. First Sec. Bank of Idaho, N.A.*, 125 Idaho 27, 867 P.2d 260, 266 (1993). Changing Stephan to Stephen and Vicky to Vickey is not material. Defense counsel candidly admitted as much at oral argument.

### Damages

The Ridenours' damages theory is simple: The Ridenours lost the benefit of the modification bargain. The modification agreement reduced the loan's original interest rate. Doc. 1–2. So, if what the Ridenours owe the bank today is calculated under the modification's interest rate, then they owe less than they would under the original rate. Accordingly, the Ridenours have pled damages.

The bank's arguments don't convince the court otherwise. First, it argues that the Ridenours have no damages because they are in default. But the Ridenours' don't deny that they are in default or that they owe money. Rather, they say they owe less because the bank breached the modifi-

cation agreement. The bank also argues that the Ridenours have no damages because they have no right to a modification. But that just assumes the question—was there contract formation such that the modification agreement bound the parties? If there was, the bank breached the contract and the Ridenours have damages. If there wasn't, there was no contract to breach and so contract damages would be irrelevant.

### Conclusion

For the reasons stated above, the motion to dismiss is GRANTED WITH PREJUDICE as to the Ridenours' claim for injunctive relief, their claims against defendants MERS and ReconTrust, and their claim entitled "Bank of America Has Repeatedly Failed to Provide the Requested Net Present Value Inputs and Cannot Maintain a Trustee Sale." The clerk is ordered to enter final judgment in favor of defendants MERS and ReconTrust. The motion is GRANTED WITHOUT PREJUDICE as to the Ridenours' claim for injunctive relief, their claims against defendants MERS and ReconTrust, and their claim entitled "Bank of America Has Repeatedly Failed to Provide the Requested Net Present Value Inputs and Cannot Maintain a Trustee Sale." The clerk is ordered to enter final judgment in favor of defendants MERS and ReconTrust. The motion is GRANTED WITHOUT PREJUDICE as to the Ridenours' fraud, promissory estoppel, and negligent infliction of emotional distress claims. The motion is DENIED as to the breach of contract claim. The Ridenours may file a first amended complaint including their breach of contract claim and attempting to address the flaws in their fraud, promissory estoppel, and negligent infliction of emotional distress claims. That amended complaint must be filed within 21 days of the date of this order.