# Illinois Official Reports

## Appellate Court

*LM Insurance Corp. v. B&R Insurance Partners, LLC*, 2016 IL App (1st) 151011

| | |
|---|---|
| Appellate Court Caption | LM INSURANCE CORPORATION, Plaintiff-Appellant, v. B&R INSURANCE PARTNERS, LLC; SOUTHERN ILLINOIS WORKERS, INC.; SPEED SEJA SCHOOL DISTRICT 802; BILLY SUDDUTH; CHRISTOPHER CONOVER; DONYETTA JONES; JOHN LEWIS; and CALVIN WORKS; Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-15-1011 |
| Filed | December 13, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CH-4394; the Hon. Mary L. Mikva, Judge, presiding. |
| Judgment | Affirmed in part; reversed in part; remanded for further proceedings. |
| Counsel on Appeal | Barnes, P.C., of Chicago (James T. Barnes and John C. Schmadeke, of counsel), for appellant.<br><br>Law Offices of Jay M. Reese, P.C., of Addison (Jay M. Reese, of counsel), for appellee B&R Insurance Partners, LLC.<br><br>Hauser Izzo, LLC, of Flossmoor (Raymond A. Hauser, Jane E. Li, and Eric S. Grodsky, of counsel), for appellee Speed SEJA School District 802. |

| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion. Presiding Justice Hyman and Justice Neville concurred in the judgment and opinion. |
|---|---|

## OPINION

¶ 1    B&R Insurance Partners, LLC (B&R), entered into client agreements with Southern Illinois Workers Inc. and Speed SEJA School District 802 whereby B&R would obtain workers' compensation insurance on their behalf. LM Insurance Corporation (LM) issued a policy that named B&R as the insured and extended coverage through policy endorsements to those employees of B&R's that had been leased to B&R's clients. LM subsequently cancelled the policy and retroactively removed B&R's clients from the policy's endorsements after B&R informed LM that none of its clients' employees were on B&R's payroll. Meanwhile, the individual defendants, all of whom were employees of B&R's clients, filed workers' compensation claims with the Workers' Compensation Commission (Commission) alleging injuries suffered during the scope of their employment. B&R tendered the claims to LM, since the alleged injuries occurred during a time when the policy was still in effect. LM then filed this declaratory judgment action. The amended complaint sought a declaration that LM had no duty to defend or indemnify against the individual defendants' claims. The trial court denied LM's motion for summary judgment and granted summary judgment in favor of the defendants. LM timely appeals. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

¶ 2                                            BACKGROUND

¶ 3    B&R Insurance Partners, LLC, is licensed by the state of Illinois to operate as an employee leasing company. B&R entered into separate, identical client agreements with Southern Illinois Workers, Inc. (SIW),[1] and Speed SEJA School District 802 (the School District),[2] which provided that B&R was a "co-employer" with SIW and the School District, respectively, and that B&R would "become the administrative employer and assume certain employer responsibilities," while SIW and the School District (referred to in the contracts as "Co-Employers") "shall be the operational employer[s] with responsibility for directing the day to day operations of Co-Employer including work assignments." The agreements stated that "Co-Employer acknowledges that [B&R] employs the employees covered by agreement, with respect to workers compensation risk management and coverage only." B&R was responsible for obtaining workers' compensation insurance coverage for all verified employees, managing any claims, and for certain risk management responsibilities. All other

---

[1]The copy of the client agreement attached to LM's motion for summary judgment that purports to be between B&R and SIW designates "Southeastern Residential Alternatives Inc" as the "client." The first page states that the inception date, agreement date, and commencement date is June 20, 2013. The signature page, however, contains the signature of Audrey Miller on behalf of SIW, and is dated July 16, 2013. Neither party offers any explanation for this.

[2]LM points out that the client agreement between B&R and the School District that appears in the record is not signed, a fact that was included in a footnote to LM's motion for summary judgment.

employer responsibilities remained with SIW and the School District, including hiring, safety training, provision of safety equipment, and all payroll functions.

¶ 4 On or about October 3, 2013, pursuant to the client agreements, B&R applied for workers' compensation insurance coverage through the Illinois Workers' Compensation Insurance Plan (the Plan), which is administered by the National Council on Compensation Insurance (the NCCI). The Plan provides a method for employers to obtain workers' compensation insurance coverage through the residual market when they cannot obtain it on their own. The NCCI binds coverage and then assigns the risk to a servicing carrier. LM is a servicing carrier for the Plan. In its application, B&R represented that it was a professional employer organization (PEO) that had coemployment relationships with SIW and the School District, among others. The NCCI bound coverage and assigned the risk to LM, and LM issued a policy effective October 3, 2013, through October 3, 2014 (the policy). The policy lists B&R as the insured. Based on the representation that B&R was a PEO, several employee leasing endorsements (policy endorsements) were issued showing B&R's clients. The School District was listed in these policy endorsements, but for some unknown reason, SIW was omitted.

¶ 5 Each policy endorsement provides: "This endorsement applies only with respect to leased workers provided by you to the lessee (client) shown below under an employee leasing arrangement. This endorsement does not provide coverage for workers that you lease to other clients or for your employees that you do not lease to any client." The endorsement then defines certain words and phrases. "Employee leasing arrangement" is defined as "a contractual arrangement, including long-term temporary arrangements whereby a lessor obligates itself to perform specified employer responsibilities as to leased employees including the securing of workers' compensation insurance." "Long-term temporary arrangement" is defined as "an arrangement where 1 company leases all or a majority of workers from another for a period in excess of 6 months or consecutive periods equal to or greater than 1 year." The policy endorsements define "lessor (employee leasing company)" as "an entity that leases any of its workers to a lessee through an employment leasing arrangement. A lessor may also be referred to as a labor contractor." Finally, "lessee (client company)" is defined as "an entity that obtains any of its workforce from another entity through an employee leasing arrangement." The policy endorsement's definitions recite verbatim the definitions of those same terms set forth in section 15 of the Employee Leasing Company Act (215 ILCS 113/15 (West 2012)).[3]

¶ 6 Between October 10 and October 31, 2013, defendants Billy Sudduth and Christopher Conover both suffered injuries during the scope of their employment with SIW, and defendants John Lewis, Donyetta Jones, and Calvin Works each suffered injuries during the scope of their employment with the School District. All five individuals submitted applications for adjustment of claims with the Commission. B&R tendered each of the claims to LM.

---

[3]The only difference is that the policy endorsements do not include a definition of "leased workers," whereas the Employee Leasing Company Act defines a " 'leased employee' or 'worker' " as "a person performing services for a lessee under an employee leasing arrangement." 215 ILCS 113/15 (West 2012).

¶ 7        On November 4, 2013, the NCCI informed LM that B&R was no longer eligible for coverage because of noncompliance with a prior carrier,[4] and LM cancelled the policy effective December 13, 2013. LM conducted an audit to determine B&R's final premium. The final premium is determined based on the actual payroll of the insured's employees and any uninsured subcontractors during the policy period. B&R did not file a payroll for any of its clients because the clients paid the payroll under their own federal employer identification numbers. LM calculated B&R's payroll exposure as zero, since LM determined that B&R had no leased employees. LM then refunded B&R's deposit premium. Because LM determined that B&R had no lessor relationship with its clients' employees, the policy endorsements were retroactively amended to remove B&R's clients, including SIW, the School District, and the claimants, from coverage under the policy.

¶ 8        On March 3, 2014, LM filed this declaratory judgment action in the circuit court, seeking a declaration that it had no duty to defend or indemnify any of the individual claims against SIW or the School District because the individual claimants were not employees of B&R (counts I and II). LM also sought rescission of the policy based on B&R's misrepresentations that it was an employer that leased workers to SIW and the School District (count III).

¶ 9        LM moved for summary judgment on counts I and II, arguing that there was no coverage under the policy for the individual claims because B&R was not an employee leasing company that employed the claimants. LM therefore argued that it properly revised the policy endorsements to remove coverage for SIW and the School District's employees. LM argued that there should be no coverage where the policy endorsements were amended after LM's audit revealed that B&R had no payroll for the employees of SIW or the School District and that B&R had no employer-employee relationship with those employees. LM also argued that, in order to meet the terms of the policy endorsement, employees of SIW and the School District must actually be B&R's employees and B&R must have acted as a lessor by leasing its own employees to SIW and the School District. LM argued that the agreements between B&R and SIW or the School District did not describe their relationship as an "employee leasing agreement" and in fact did not even contain the word "lease." Because B&R only agreed to provide workers' compensation insurance and risk management guidance and undertook no other employer function, LM argued that B&R was not an employer of any of SIW or the School District's employees, including the claimants, and thus could not lease those employees to anyone.

¶ 10        B&R filed a cross-motion for summary judgment, which the School District joined, requesting that the trial court find coverage for all the individual claims. Defendants argued that the policy endorsements attached to the policy were forms prepared by the NCCI, which were modeled on the language of the Employee Leasing Company Act. Defendants argued that the client agreements between B&R and SIW and the School District were employee leasing arrangements as defined under section 15 of the Employee Leasing Company Act (215 ILCS 113/15 (West 2012)), which in turn would satisfy the policy endorsements and provide coverage.

---

[4]Although it does not affect our analysis, LM's appellant's brief states that this occurred on November 4, 2014, a date that is repeated elsewhere in the record. But we note that given the timeline of events, particularly the filing of the complaint in March 2014, we believe that the "2014" is a typographical error and infer that LM was informed on November 4, 2013.

¶ 11    The trial court requested additional briefing regarding the Employee Leasing Company Act's "requirement that the lessee 'obtain' workers from the lessor." LM's supplemental brief argued that the ordinary meaning of "obtain" is "to bring into one's possession; to procure, esp. through effort." Defendants argued that the term "lessee," as used in the Employee Leasing Company Act, provides "context to understand an 'employee leasing arrangement.' " Defendants argued that because B&R was licensed under the Employee Leasing Company Act, it was a "lessor" and, as a co-employer, B&R was obligated to perform certain responsibilities in relation to SIW and the School District's employees such that coverage should be afforded under the policy endorsements.

¶ 12    On March 11, 2015, the trial court entered a written order finding that B&R met the definition of an employee leasing company under section 15 of the Employee Leasing Company Act (215 ILCS 113/15 (West 2012)) and that LM's retroactive removal of the School District from the policy endorsement was improper. The trial court went on to find that "this resolves the issue of coverage as to the School District, which was explicitly listed on the Policy's Employee Leasing Endorsement." The trial court also found that, even though SIW was omitted from the policy's endorsements, under *Travelers Insurance v. Precision Cabinets, Inc.*, 2012 IL App (2d) 110258WC, B&R's failure to secure a policy endorsement that included SIW as a client did not defeat coverage for SIW under the policy and "LM is obligated to cover Sudduth and Conover's claims." In finding B&R's estoppel defense moot, the trial court found "for the reasons stated in the discussion, the Court finds that LM must defend and indemnify SIW for Sudduth's claims" and concluded "[LM's] motion for summary judgment is denied, defendant's motion for summary judgment is granted. All issues in this case are resolved." LM timely filed this appeal.

¶ 13                                    ANALYSIS

¶ 14    As an initial matter, we have an independent duty to determine our jurisdiction. *In re Marriage of Crecos*, 2015 IL App (1st) 132756, ¶ 16. Our jurisdiction is limited to final judgments (*Cole v. Hoogendoorn, Talbot, Davids, Godfrey & Milligan*, 325 Ill. App. 3d 1152, 1153 (2001)), and a final judgment is one that disposes of the rights of the parties, either upon the entire controversy or some definite and separate part of it. *In re Guardianship of J.D.*, 376 Ill. App. 3d 673, 676 (2007). Here, LM appeals from the order granting summary judgment in favor of defendants as to counts I and II of LM's amended complaint requesting a declaration that there was no duty to defend or indemnify SIW and the School District under the applicable policy. That order, however, does not expressly address count III, in which LM sought rescission of the policy based upon B&R's representations that it leased employees to SIW and the School District. We find the question of whether there is a duty to defend and indemnify is a separate and distinct issue from whether LM is entitled to rescind its contract of insurance due to material misrepresentations made by B&R. Furthermore, the trial court's order states that "all issues in this case are resolved," and we understand that to mean that summary judgment was granted in favor of defendants on count III. For these reasons, we find that we have jurisdiction pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303(a) (eff. June 4, 2008).

¶ 15    On appeal, LM raises two related arguments. First, LM argues that B&R was not an employer of the claimant employees of SIW or the School District under any common-law or statutory definition of "employer" and therefore there was no coverage because the policy

endorsements were properly retroactively revised to reflect that B&R had no leased employees during the policy period. LM argues that B&R could not obtain workers' compensation insurance on behalf of SIW or the School District's employees regardless of whether B&R was a licensed employee leasing company because the Employee Leasing Company Act does not create or define employer status but instead merely regulates the employee leasing/PEO business. LM claims that "it is the employer—and no other—that has an insurable interest in its workers" and B&R could be an employer only if it met the definition of a common-law employer or a statutory employer. Second, LM argues that summary judgment should not have been granted in favor of defendants because there were genuine issues of material fact as to whether a lessor/lessee relationship existed between B&R and its clients SIW and the School District. Stated differently, if B&R had no employees it could not lease employees to either client.

¶ 16    We note that LM regularly fails to cite the record or authority in support of its contentions. This has presented challenges in understanding and evaluating LM's arguments. We do not find, however, that LM's violations are severe enough to warrant forfeiture, as its appellant's brief does provide some citations of the record and supporting authority, and the responses filed by B&R and the School District sufficiently apprise us of their positions. We also recognize that there is little case law on this particular topic. We therefore will address the merits of LM's arguments on appeal.

¶ 17    Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). A party moving for summary judgment bears the initial burden of production and may satisfy it by either showing that some element of the case must be resolved in its favor or that there is an absence of evidence to support the nonmoving party's case. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). Once the moving party satisfies that initial burden, the burden shifts to the nonmoving party to come forward with some factual basis that would entitle it to a favorable judgment. *Id.* A trial court's ruling on summary judgment is reviewed *de novo*. *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 15. This court reviews the trial court's judgment, not its reasoning. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995). Additionally, when interpreting an insurance policy, our primary objective is to give effect to the intention of the parties as expressed in the policy language. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005).

¶ 18    LM filed this declaratory action seeking a declaration that it had no duty to defend or indemnify B&R under the policy and the endorsements, contending that B&R had no employees and therefore could not lease its employees to either of its clients, SIW and the School District. LM brought this action after B&R tendered the defense of claims filed in the Commission by certain claimants. B&R claims that it is a "co-employer," along with SIW and the School District, to the claimants and that the policy issued by LM covers the claims. LM contends otherwise. Thus, the first question before the trial court was straightforward: did LM have a duty to defend the tendered claims pending in the Workers' Compensation Commission? If there is a duty to defend, LM is obligated to defend before the Commission where one of the issues to be resolved is whether the claimants suffered employment-related injuries (*TTC Illinois, Inc./Tom Via Trucking v. Illinois Workers' Compensation Comm'n*, 396

Ill. App. 3d 344, 356 (2009)) and if so, assess liability against the claimant's employer. The "ultimate decisionmaker" of these questions is the Commission. *Roberson v. Industrial Comm'n*, 225 Ill. 2d 159, 173 (2007).

¶ 19    The claimant's underlying workers' compensation claims alleged that they were injured during the scope of their employment. At the time of the alleged injuries, the policy provided workers' compensation insurance to those employees leased by B&R to its clients. In our view, this satisfies the threshold issue of whether the claimants' claims fall within or potentially within the policy's coverage sufficient to find a duty to defend under the policy. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992). As such, we affirm summary judgment in favor of defendants on the issue of LM's duty to defend the underlying actions pending before the Commission.

¶ 20    The next question before the trial court was whether LM had a duty to indemnify B&R, SIW, and the School District for any liability for the claimants' claims. The issue of employer liability is a decision for the Commission to make. 820 ILCS 305/18 (West 2014). There is no question that B&R, SIW, and the School District contend that a coemployer relationship exists under their respective agreements. B&R contends that it is a duly licensed PEO under the Employee Leasing Company Act and that a borrower/lender relationship existed that was covered under the policy. The Commission, however, has yet to determine the legal effect of this position as it relates to employer liability with respect to the claimants. See *Continental Western Insurance Co. v. Knox County EMS, Inc.*, 2016 IL App (1st) 143083, ¶ 20 (citing *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 468 (2010) (discussing the exclusive jurisdiction of the Commission on questions falling within its expertise, including the existence of an employment relationship)). It is the Commission that determines employer liability and, as between joint employers, determines primary and secondary liability. See *Corrugated Metals, Inc. v. Industrial Comm'n*, 184 Ill. App. 3d 549 (1989). Therefore, the trial court's finding that LM has a duty to indemnify under the policy was premature and must await a final determination by the Commission. See *Outboard Marine*, 154 Ill. 2d at 127 (finding "the question of whether the insurer has a duty to indemnify the insured for a particular liability is only ripe for consideration if the insured has already incurred liability in the underlying claim against it").

¶ 21    LM argued in the trial court that the agreements between B&R and SIW and the School District did not meet the definition of an employee leasing arrangement as defined under the policy endorsement, arguing that the agreements were silent as B&R's role as a lessor and that B&R did not lease any employees to SIW or the School District. In response, defendants argued that B&R was required to undertake specified employer responsibilities under the coemployment agreement and this was sufficient to establish a coemployer relationship. We note, however, that defendants did not address how, without having any employees on its payroll, B&R was acting as a lessor and offered no explanation of how B&R could be considered a lessor for purposes of the policy endorsement or under section 15 of the Employee Leasing Company Act (215 ILCS 113/15 (West 2012)). In any event, it is for the Commission to make the determination of employer liability, if any, and whether liability falls on a single employer or whether liability is joint and several between employers of the respective claimants. See 820 ILCS 305/1(a)(4) (West 2014).

¶ 22    Finally, by filing this declaratory judgment action, LM not only preserved its right to contest indemnity in the event that the Commission determines the claimants' employer is

liable for any injuries but also preserved its right to pursue rescission of the policy due to some misrepresentation during the application process. See *Those Certain Underwriters at Lloyd's v. Professional Underwriters Agency, Inc.*, 364 Ill. App. 3d 975, 983-84 (2006). As discussed above, the trial court prematurely decided the issue of indemnity. But the trial court also erred by effectively granting summary judgment in favor of B&R on LM's claim for rescission. The trial court granted summary judgment in favor of defendants after finding that B&R met the definition of an employee leasing company under section 15 of the Employee Leasing Company Act (215 ILCS 113/15 (West 2012)), which thus satisfied the policy endorsement. This resolved the issue of whether LM had a duty to defend under the policy, which is a separate issue from whether LM had a legal basis to rescind the policy. LM sought rescission of the policy on the basis that B&R made material misrepresentations regarding whether it leased its employees to its clients as a PEO and argues that it properly removed B&R's clients from the endorsement because an audit revealed B&R's clients' employees were not on B&R's payroll. B&R, on the other hand, argues the agreements with SIW and the School District established a coemployer relationship sufficient to come within the terms and conditions of the LM policy. Whether B&R leased any of its employees goes to heart of whether B&R made any misrepresentations to LM, and it requires a factual determination that the trial court should not have resolved on summary judgment. Therefore it was error to enter summary judgment in favor of defendants on count III.

¶ 23                                                        CONCLUSION

¶ 24        For the foregoing reasons, we affirm the trial court's judgment in favor of defendants that LM has a duty to defend B&R, SIW, and the School District before the Commission, we reverse the judgment of the trial court in favor of defendants finding LM has a duty to indemnify under the terms of the policy at issue, and we reverse the judgment in favor of defendants on LM's claim for rescission. We remand for further proceedings consistent with this order.

¶ 25        Affirmed in part; reversed in part; remanded for further proceedings.